May it please the Court, Adam Bach here on behalf of East Coast Storage and Equipment. Your Honors, this case concerns a contract for the installation of racking at a manufacturing facility in Gray Court in Anderson, South Carolina for a company called ZF, who's the respondent here. The allegations of the case are fairly simple. East Coast provided racking designs and drawings for the installation of this racking system at ZF's facility and never got anything for it, was never paid for it, received no compensation for it. The parties offered different versions of what they agreed to. East Coast provided testimony and evidence that in exchange for providing the racking designs would be provided through and attended to the project contract that would be executed through, as is common in construction, owner, general contractor, subcontractor, that East Coast compensation would come through that overall project contract. ZF tells a slightly different version of the story. ZF says that the oral agreement between the parties was that East Coast would simply be included, its designs would be included in the request for quotation that was issued to general contractors, and that East Coast would be included as one of the alternatives a contractor could choose as a racking subsupplier. So essentially your case comes down to the fact that there was a disputed issue of material fact as to the consideration for this oral contract. There was no meeting of the minds. That's correct. Well, that is correct, Your Honor. We would contend, as we are permitted to do under South Carolina law, bring alternative theories. Right. I understand that. But as I understand it, your case encapsulated is the fact that there was no meeting of the minds on the facts were materially in dispute, so the issue of the oral contract could not be disposed of at summary judgment, and you were entitled to pursue the case on that as well as the alternative theories of recovery regarding the equitable remedies. That's correct, Your Honor. Okay. That's exactly right. And we believe- Well, I think that's what I took from your briefs too, but I look at the contract as your client testified to it, and he was asked, but was there any specific sum of money offered by Kristoff or anyone else that day to you? And his answer was, I was just guaranteed that I would be the sole supplier for the project. Okay. Did you ever request a specific money from them in exchange for the drawings? No. I took their word that that would be the sole supplier, and the revenue would be derived from the project, the contract. Well, that's exactly what happened. You became the supplier, THS hires you as a subcontractor, and the expectation then would be you would get your compensation. So the contract as testified to, the oral contract as testified to by your client is what was addressed on the summary judgment, and the court concluded that that was fulfilled. And I could not find out any different. I looked at the specs, and they specified your client, and that somebody could receive an alternative bid, but your client was selected as indicated, and then your client became the subcontractor. And that's the compensation. This was the compensation for the drawings. It says, and what happened during the closed door meeting? I was guaranteed that I would be the sole supplier, and that was basically the quid pro quo. I'll do the documents, and I'll be the supplier, and I'll get my money later under the contract. Correct, Your Honor, which ZF then breached when it terminated- No, no, no, but that's, ZF hired THS, right? Correct, Your Honor. And THS hired your client? Correct, Your Honor. And that relationship broke up, apparently, and that's been settled, right?  Well, Your Honor, what I would say first, the promise that ZF made, as we testified to you, and which we believe a jury could find, infer from the facts, and the light most favorable to East Coast, with all inferences drawn in our favor, as the court's required to do at summary judgment, was that we were guaranteed to be the sole supplier, which ZF breached when ZF encouraged our termination, and in fact, that word encouraged, Your Honor, is a little bit- That's a breach, that may be an interference with the contract after it's entered into, but your contract, oral contract, beginning and ending, was to be the sole supplier, and that's what your man testified to, and he said it repeatedly in response to two or three questions. He became the sole supplier, in fact, he was the sole supplier. For about five days, Your Honor, before ZF then broke its promise to us. That's another issue, but that's not breach of the oral contract. The oral contract was to make him a sole supplier, and he was, and THS, which was not a party to all of this, was a person awarded the contract, and the more important thing is THS and your client went to arbitration and actually didn't get there, you guys settled it, and so that issue is out. So whatever they did wrong in terminating you was presumably taken care of in the settlement. I would just also point out, Your Honor, I disagree with the court on that point. I think that ZF still, if I guarantee that somebody's going to be my sole supplier or sole distributor or sole painter or sole designer, and then five days later- You just start with a proposition that ZF did not guarantee that they would be its sole supplier. DFC said it would specify that the contractor would specify the sole supplier, and the contractor did. But it's our contention that ZF did promise that they'd be the sole supplier, and certainly at the summary judgment phase, we believe that we are entitled to a jury, if there's a dispute of material fact on which a jury could find in our favor, we certainly think that we are entitled to. I would just like- What's the fact- And what is the- I'm sorry. Go ahead. No, what is the disputed material fact? That ZF promised us that we would be the sole supplier, which they then breached when they directed THS to terminate us. And I would just like to, before I'm, I don't know if we're moving on for this conversation or not, but I would just like to point out that ZF's position that it was just encouraging or suggesting termination, it's up to THS, is not consistent with the record. ZF actually retained- The breach of that contract, the subcontract between THS and East Coast, is a different issue than the contract for the drawings. The discussion for the drawings was the sole compensation was that they be made the subcontractor in the specifications. That's the- And that was done. They were specified by name in the quote, and the contractor did, in fact, make them the subcontractor. Now, that ends that contract. I just, Your Honor, I apologize. I disagree. I think that once ZF received our designs, in exchange for making us the sole supplier, that they breached that when they terminated our contract. And I did want to just mention- If you're agreeing there was a contract- Well, it's our contention that there was, that ZF promised we'd be the sole supplier and that our compensation would come through the construction contract, through the construction project. But I would also contend- If you're agreeing there was a contract then, how are you entitled to plead alternatively equitable remedies? Your Honor, it's a common pleading device in South Carolina. I would point the court's attention to Jay Stipp v. Richardson, a court of appeals case from 2011 that we cited. In that case, the details of the contract aren't necessarily important. But in that case, it went to a jury trial where the jury found there was no breach of contract. That the parties had acted completely- If you allege to breach a contract- We have. And you're allowed to plead alternatively- Correct. The equitable remedies. Correct. But, if your breach of contract count is found to state a claim for breach of contract, then the others fall away, right? No. I would say that, again, we're allowed to bring- We are allowed to allege them alternatively. Correct. But, if you have a breach of contract came and it's found that there's a breach of contract, oral contract was made, and that's what the court found, right? No. The court found there was no breach of the oral contract. No. The court found there was an oral contract. Oh, I'm sorry. Correct. Right? Correct. And the terms of the oral contract are stated by Mr. Gads here at page 103. And he says, was there any specific money? It was pressed two or three times. Was there any money promised? No. I was basically, in exchange for the drawings, I was guaranteed to be the subcontractor. And then he said, I will get my money through the subcontract. Correct, Your Honor. And I think that- But ZF didn't promise that. ZF promised to make them the sole supplier. Well, this is where I think, again, by the court, the court has jumped the gun here on summary judgment. Because first of all, let me just say, in JSTF v. Richardson, the South Carolina Court of Appeals clearly, in a case where no breach of contract was found, still proceeded to remedies on quantum merit. But we get to another problem with the court's order, which is that the version of the facts that was accepted by the court is not actually what's shown in the record. The version of the fact that's accepted- And I'm reading your version of the contract right here. It's page 103. It's only about 10 lines long.  Your Honor, but what I'm saying is that accepting our version of the contract, there was actually a real dispute about the contract terms at the lower level. ZF said something totally different about what they thought they agreed to than East Coast did. A reasonable jury- Let me ask you this, because I'm a little confused here. Because I thought the argument below by ZF was that basically they only agreed to recommend East Coast as one of the potential subcontractors. That's exactly right, Your Honor. And I think even, I was looking at the lower court's order, and I thought that that's what the lower court said that there was, which I found was interesting at J413, that the court acknowledges there was a conflict between the terms of the agreement. Right, Your Honor. And we- Okay. So the argument that you were the sole, and I'll ask them this, because I thought the dispute was that they are saying that you all were supposed to be given the opportunity to bid, and they would be recommended in exchange for you doing the drawings. That is absolutely correct. That is all that ZF ever testified to. And the court resolved that dispute, this is what the court said, assuming that East Coast created an issue of fact with respect to whether it was guaranteed the right subcontract, the undisputed evidence established that East Coast, in fact, was awarded the right subcontract. The court then found that dispute immaterial. But Your Honor, I think that that finding is irrelevant to a question of whether or not we get to proceed with equitable theories. Because a jury-  Because a jury could find that there was no meeting of the minds. A jury could- But you're alleging it. You can't come and say there was no contract. You could, if you're alleging there's a contract and the court accepts it, whether it's a jury or a court, you can't come back and say I didn't allege a contract. Your Honor, that is, respectfully, that is not the way that pleading works in South Carolina, nor has it ever. It works the same way in South Carolina as everywhere. In other words, you plead alternatively. Correct. You're entitled to the federal rules provide for that. But you can plead alternatively if the jury finds there was no contract. But the court here accepted your contract. Jesda versus Richardson, I just again point to the court. The jury actually found there was a contract. There was no breach of the contract. And the court still proceeded to consider the equitable remedies under quantum merit. Because your Honor, the elements of quantum merit are did you get a benefit from my client? Was that provided non-gratuitously? And did you retain it under circumstances where it's not fair that you did so? And that analysis can happen whether there was a contract, wasn't a contract, a breach of contract. In Boykin, they found no contract, that there was no meeting of the minds. And same with Brazel versus Hardis-Spartanburg Hotel. No meeting of the minds. So you get quantum merit. Jasda, they found there was a meeting of the minds. You still can proceed with quantum merit. It seems to me, though, that your position here today, you're conceding that there was a contract. Your Honor, our position is. And you're saying it doesn't matter that I'm agreeing there's a contract. Because under South Carolina law, I can still, because this contract was breached and I didn't get anything from ZF, I can still proceed under quantum merit, notwithstanding the fact that I have alleged and proved an oral contract. Correct, Your Honor. I think, again, I think it's so important to consider where we are in the phase of this case. We are at summary judgment. I believe that we have the right to go forward with the jury with all of our causes of action. If the jury concludes that we had a contract that covers these same services and it was breached, then certainly we would be required under South Carolina law to elect our remedy at that point. Do we proceed with our contractual remedies or do we proceed with our quantum merit remedies? But they are not exclusive. Okay. Tell me how that would happen under South Carolina. So, the jury, you're saying, would be given a question as to whether there was a contract between the parties? The procedural history in Richardson is instructive on this, Your Honor. Again, the case was tried. The jury found no breach of contract. The jury was dismissed. And then the court, but the jury did find as to quantum merit, I'm sorry, the jury didn't find as quantum merit, the court did find as to quantum merit, and the court said we'll proceed as to the equitable portion of the case. And I see that. I mean, I would think, I'm guessing that in South Carolina, and I probably shouldn't guess, but that the equitable remedy is a matter for the court. Correct, Your Honor. And so, so, it would have to be a two-stage proceeding. And traditionally, the way that it's done, Yes, Your Honor, and traditionally, the way that it's done is the entire, or the way that I've seen it done is that the entire case is tried before the court. The jury decides on the legal questions, and then the equitable questions are for the court based on the same record and evidence. It's not a very burdensome procedure. Thank you. Thank you, Mr. Block. You have some rebuttal. Mr. McNally? Just before we get started, you don't dispute it as the way that it's handled in South Carolina, the equitable, the jury trial, and then the equitable portion of it? Well, I do dispute that because both below and here, they can see that an express contract exists. The equitable claims fall away if that is the case under South Carolina law. In what case are you citing? Well, if you look at it, I mean, I think there's a couple of different cases that we've cited in our briefing. I mean, number one would be Williams Carpet Contractors versus Skelly, which unjust enrichment is not available when a plaintiff seeks for the specific task that's covered by the express contract. As it relates to promissory estoppel, it's the same result in Volvo Construction Equipment versus CLM Equipment, which was a 2004 case from this court, also concludes the same thing. The promissory estoppel cannot coexist once the express contract exists. Once they exist, I guess there's a determination by the jury that there is a contract, right? Well, in this record, both below and today, as Mr. Bach acknowledged, they admit that there's a contract. And Judge Niermeyer pointed out the very crisp testimony from Mr. Geddes that acknowledged that this contract existed. Okay. But once, help me with the procedure because I'm not well versed in South Carolina law. You're saying the jury makes the determination if the parties ask whether there is a contract. Is that correct? That would be correct. If there was an allegation, there was no meeting of the minds, and if there was not the existence of an express contract, the jury would make that determination first. And you're saying that in this case, the jury would not make that determination because they were alleging the existence of an oral contract. Well, in this instance, it was appropriate for the district court to grant summary judgment under Rule 56 because of the existence of that express contract. That is the point. If both parties hadn't conceded that that contract existed and this went to the jury, the jury would make the determination first on the express contract. And if an express contract did not exist, it could go forward and consider whether there was implied contract theories that East Coast carried its burden on. And you're saying that the jury would determine the equitable remedy and not the court sitting in a chancery capacity? The court would consider the remedy if the jury made the finding on the implied contract theory. So I agree on that. And really, the nuance between the unjust enrichment and quantum merit is just the approach on what that remedy would look like, whether it's the value of the benefit conferred versus the value of the services provided. Just a slight nuance between those two theories. Just to reiterate on the contract issue, I had thought, based on the record and what the testimony was and what the court found, is that both sides agreed there was an oral contract. There was a disagreement as to whether East Coast would be recommended or whether they would be guaranteed. They thought, they said they'd be guaranteed, you guys said it'd be recommended. That's a dispute. The court said that dispute doesn't matter because they did become the subcontractor. And as a consequence, nobody disputes there was a contract. It was just whether they would become the subcontractor. And the court said, in fact, they did become the subcontractor, and therefore that was  It doesn't matter which version of the contract. They both agreed there was an oral agreement made there, and there were some notes of that meeting made. I can't remember what the notes exactly said about that. So the notes from the March 27th meeting indicated there would be no guarantee, that they would be included as a preferred contractor in the RFP process, but you're exactly right. But the court concluded that there was a contract, but the dispute over whether it's recommended or guaranteed is immaterial, doesn't make a damn bit of difference, because East Coast did become the subcontractor. I liked your lead-in to the fact that it didn't make a difference, because that was exactly right. Well, let me, I just want to be clear, because I'm confused about what position you all are taking. Are you saying that the agreement between ZF and East Coast, based on the oral agreement, your position is that they were supposed to be, he's saying sole supplier. My understanding was that your position was we are only recommending them, we will only recommend you to these contractors as a subcontractor. It was a requirement that the responsive bidders needed to include East Coast as a subcontractor for the RAC system in their proposals. That is what ZF advanced in the lower court based upon the record evidence. Mr. Getty's testified that in the closed door meeting that occurred at the end of the March 2017 kickoff meeting, that they would be guaranteed to be the sole source. What Judge Cain analyzed- And you're saying that we never guaranteed that, right? We do say that. The meeting minutes say that. Our testimony says that. That you never guaranteed. We did not guarantee. Okay. And so, let me ask you this. So how are you, how do you deal with Mr. Everton's testimony? Mr. Everton is, I guess he's the president of THS, who says that it was his understanding also that it was a, I think it's a JA, let me put my glasses back on. JA 206 through 207, 323, 337, 39. He says that he was under the impression that they were required also to use East Coast in their proposal. That's exactly right. We observed at the lower court that that testimony was not taken in this case. It was taken in the separate arbitration. It was only presented four days before the dispositive motion cut off. However, we don't disagree with that fact. They were required to include East Coast in their bid to adhere to the requirements of the RFP process. Judge Cain then took a look at that. But now, I think the testimony is that they were required to use them, to hire them. And then he goes on and he talks about the termination, and that they were instructed to terminate the contract with, that basically that ZF is instructing them all along the way as to how to handle this contract with, how to handle the bidding process, how to handle the contract all along the way. My question to you is how do you, that line of testimony from Mr. Everton, line up with your notion that we just basically said that we will recommend, you're not required to. When it sounds like if you read what Everton says that they were required to, which would be consistent with what he's arguing. So I would say three things, Your Honor. First and most importantly, we believe that testimony was not properly before the lower court. Regardless, it was not a material issue in dispute as recognized by Judge Cain. Yeah, but it seems to me that maybe we have perhaps an inartful argument here because if there is a dispute as to a consideration, they're saying we had a contract and the contract provided X. You're saying we had a contract and the contract provided Y. Why isn't that a disputed material fact as to the meeting of the minds not to be resolved at summary judgment? That's what I'm having trouble here. Because they received the subcontract from THS. So there's two important things here. Right, but why wouldn't a jury be entitled to infer that if you received the contract, you were entitled to perform it? You weren't simply chopped off at the knees after five days. Not at all, Your Honor. I think there's two important points. ZF's performance was fully complete at the time that that contract was awarded. East Coast then elected to enter into a contract with THS, that subcontract, and that had two critical provisions in it. Number one, it's section four of that agreement, was the only provision providing for compensation to East Coast regarding this project. All of the testimony was, both from Mr. Giddes and from Mr. Zeff at ZF, that there was never a promise of compensation by ZF to East Coast. It was that contract between THS and East Coast. So what you're saying, and I don't mean to cut you off, I want to make sure I understand. So what you're saying is that ZF only promised, I will get your foot in the door. After that, you're on your own with THS. Exactly right. Under the contract that they negotiated, and as we observed. Well, that's inconsistent with Mr. Everton's testimony. And I understand you're saying you dispute because that was in a separate proceeding, but it's sworn testimony, right? I mean, he said that you all required them to hire them as a subcontractor. And then he also testified that you all told them to terminate the contract and also told them not to pay it. So let me- To pay any compensation. Let me comment on those facts because there's a critical contradiction, East Coast briefing against the record. So that contract contained at a section 11C between THS and East Coast, which they did not include ZF as a party in, a termination for convenience provision. There was one email after THS informed ZF that they were having performance issues with East Coast five days into the contract that there was going to be, that they would encourage that they move on from the contract. ZF then subsequently notified that it was THS's responsibility to make the determination for what it was going to do. And in addition, there was a subsequent letter from Mr. Schenck at ZF informing both parties that they should perform their respective contract obligations. At the time that the termination occurred, and prior to that, there was a change order request submitted by THS to ZF regarding East Coast. And what that provided, and this is the big distinction and contradiction of the record, is that they were seeking additional compensation because East Coast had not performed, had not completed the design drawings, and they wanted an increase in the contract price as a result of it. So in this record, East Coast originally does some drawing work on the rack system within this automated retrieval storage system. They spent $8,600, $8,640. They don't even complete the design work. And as that termination scenario progresses, it is East Coast that tries to get additional money for the fact that they hadn't performed. And ultimately, THS is the party that made the decision to terminate under the convenience provision, which allowed them to terminate for any reason or no reason at all, and invited in that termination notice East Coast to submit any of the invoices for cost incurred through the project at that point, which is what became the subject matter of their dispute that went to arbitration and was ultimately resolved. I guess, and even the lower court, and I guess this is in follow up to what Judge Kenan said earlier, it seems as if there's, I'm not sure anyone's disputing that there was some oral agreement, but it just seems as if there's some conflict regarding the terms of the oral agreement as to a meeting of the minds as to what was agreed to. And I mean, I can't help but even look at the, which is JA 413 or page 12 of the district court, where he says, they dispute terms of that agreement, offering conflicting evidence as to what precisely the ZF defendants were obligated to give East Coast in exchange for the drawings for the racking expansion at the plant. I mean, so even the district court is acknowledging, I'm not saying that there was a, what the agreement was, whether y'all have breached it or not, but we're at a 12B6 stage and the district court is saying that there's conflicting evidence. Well, I think what Judge Kane observed on, and I think it's on 413, is that it wasn't a material dispute of fact because they ultimately were awarded the contract. That is really the crux of it. The only dispute that the parties talk about is recommend versus guarantee. Exactly. And, but they all agree there was a contract. The notes tend to favor you, the notes taken at the meeting. That's exactly right. But regardless, if you give East Coast its version, which is that they would be guaranteed, they in fact were, did receive it. That's your position and it's immaterial therefore. That's what the district court concluded. That it, they received the contract and therefore the dispute, that term of the dispute, it's a little bit like a contract says, I agreed to pay 12 cents for a glass of lemonade and you say no, it was 11 cents. Well, if they paid 12 cents anyway, that dispute doesn't make anything. They sold the lemonade and they paid the 12 cents so somebody can't come and say we had a dispute of fact as to whether it was 11 or 12. And if you never got the lemonade, it doesn't matter? Yeah, if you never got it, it does matter. Well, if you never got the lemonade, it does matter. But here, they got the subcontract and they elected not to include ZF in that. They didn't, they elected not to include a compensation term between ZF and East Coast and then it was their job to perform. And recall, they are the party that entered into the contract with a termination for convenience provision. So as they've talked about this encouragement and Judge Kane appropriately noted this on page 13 of his opinion, if they had some complaint after our contract was performed, that would have resonated in tort. Specifically, tortious interference is what Judge Kane observed. I'm happy to answer any other questions that the court has this morning. I think clearly if the express contract exists, the implied contract theories as said today fall away. And I think any dispute of fact here is not material in looking at the evidence most favorable to the non-moving party and it was appropriate for the district court to grant summary judgment. We'd ask that that be affirmed. All right. Thank you. Thank you very much. Mr. Brown. Thank you. I'd just like to mention a few things. First, I think Judge Keenan's statement is exactly right. That it is a reasonable inference that a jury could draw that when somebody is guaranteed that they will be the sole supplier of a racking system or lemonade, that the person cannot terminate the very next day and that a reasonable inference is that we will be entitled to complete the contract. That is what it means. You know what I'm worried about? Your theory, Mr. Bach, and my articulation of your theory is, was ZF in a position to deliver guaranteed performance or were they only in a position based on THS's status as the general contractor, were they only in a position to deliver access as opposed to full performance? Your argument is full performance, but were they in a position to deliver that by their contract? Excellent question, Your Honor. I will say that I believe it's at 302 paragraph 12 of the ZF THS contract. They do exercise some control over which subcontractors they allow in their facility. Could you give me that site again? I'm sorry. It's Joint Appendix 302, paragraph 12 of the ZF THS contract. Okay. They do exercise some control over who can and cannot be a subcontractor at their facility. I'd also just point the Court's attention back to the string of testimony from Emberton about the termination. In fact, we showed him an email where Mr. Zeff from ZF tries to push responsibility for East Coast's involvement in the project back on THS, and I asked him. There's an email from Christoph Zeff in August 2017 where he says it was THS's job to pick the subcontractor and your job to manage them. Any idea why Mr. Zeff would say you all picked EC or that it was your responsibility? Answer, no, I don't. Mr. Emberton from THS, no, I don't. Question, that was not y'all's understanding. That's correct. That was not our understanding. He goes on to say, I asked him, Mr. Emberton, so in order to use somebody other than East from ZF to do that? Answer, correct. A jury could certainly infer based on Mr. Emberton's testimony, they have to infer. It is what Mr. Emberton testified to. This is, and I do think it's important to take a step back and recognize that this is an incredibly common arrangement. This is not some contract that we've never seen. It is an owner trying to get work through a general contractor with a subcontractor, and I don't think any jury would have a hard time understanding that if I own a house or a manufacturing facility, I can decide who comes in there and who doesn't. And that if I require that we use my painter or my roofer or my designer, certainly the general contractor could say, I don't want to take the contract under those conditions, but the owner has the right to. And if they take it, as Mr. Emberton says, we did. We agreed we'd use East Coast because you all required it. They did have the power to either see that their promise that we remain the sole supplier, which they breached when they brought engineered products on as a second supplier, is accurate. I would also just, to the Court's questions about the procedure below, I meant to bring the Richardson case up here, but I grabbed the wrong one. Anyways, I'm sorry. Again, in the Richardson case, the Court, it's a real estate contract, earnest money was paid that was supposed to go towards the purchase price. There was a written agreement. The contract was not performed for whatever reason. And again, the jury found neither party breached the real estate contract. But the owner tried to retain the earnest money, and the lawyer following the jury's verdict requested a ruling from the Court on its quantum merit action. It preceded the quantum merit, found that the earnest money that had been paid in was a benefit that was conferred upon the owner, that it was inequitable for them to retain, and therefore, the quantum merit action could proceed. So is your position that if you were allowed to, if this case was allowed to go to trial, you would try to breach a contract case? If the jury says that there is no breach of contract, then the district court would be, Correct, Your Honor. If the jury says there is a breach of contract, then you would continue to pursue the breach of contract. You would move forward, I guess, on the damages on the breach of contract claim. And at that point, the Court would not consider the other. Correct, Your Honor. And you know more about this than I do. I know you're on the bench there. But I also think that the Court could require the parties to elect their remedies at that stage, too. They could say you were found for a breach of contract. You can now, at this point, either proceed to damages under the breach of contract, or we can go forward on the quantum merit claim. And, Your Honors, I see I'm out of time. Okay, thank you. Thank you. All right, we'll come down and agree counsel and proceed on to the next case.
judges: Paul V. Niemeyer, DeAndrea Gist Benjamin, Barbara Milano Keenan